UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE LOCAL 7 TILE INDUSTRY WELFARE FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY ANNUITY FUND, TRUSTEES OF THE TILE LAYERS LOCAL UNION 52 PENSION FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY RETIREE WELFARE FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY VACATION FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY SUPPLEMENTAL FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY PROMOTIONAL FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY TRAINING FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY BUILDING FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY DEFENSE FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY LOCAL POLITICAL ACTION COMMITTEE, TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, THE INTERNATIONAL MASONRY INSTITUTE, AND THE TRUSTEES OF THE BRICKLAYERS AND ALLIED CRAFTWORKERS POLITICAL ACTION COMMITTEE, <br><br> Plaintiffs, <br><br> -against- <br><br> BAYBRENT CONSTRUCTION CORP. and LEGACY TILE CORP., <br><br> Defendants. | 25 CV _____ <br><br> **COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiffs, by and through their attorneys, Virginia & Ambinder, LLP, as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION

1.  This is a civil action pursuant to sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended, 29 U.S.C. §§ 1132(a)(3), 1145 ("ERISA"), and section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C.

-1-

§ 185, and other applicable law, to collect delinquent employer contributions to a group of employee benefit plans, and for related relief.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and pursuant to 29 U.S.C. §§ 185 and 1132(e)(1).

3. Venue is proper in this judicial district pursuant to 29 U.S.C. §§ 185(a) and 1132(e)(2).

## THE PARTIES

4. Plaintiffs Trustees of the Local 7 Tile Industry Welfare Fund, Local 7 Tile Industry Annuity Fund, and Tile Layers Local Union 52 Pension Fund (collectively, the "Local 7 Benefit Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5). The Local 7 Benefit Funds are also multiemployer employee benefit plans within the meaning of Section 3(3), (37) of ERISA, 29 U.S.C. § 1002(3). The Trustees of the Local 7 Benefit Funds are fiduciaries of the Local 7 Benefit Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). The Local 7 Benefit Funds maintain their principal place of business at 45-34 Court Square, Long Island City, New York 11101.

5. Plaintiffs Trustees of the Local 7 Tile Industry Retiree Welfare Fund, Local 7 Tile Industry Vacation Fund, Local 7 Tile Industry Supplemental Fund, Local 7 Tile Industry Promotional Fund, Local 7 Tile Industry Training Fund, Local 7 Tile Industry Building Fund, Local 7 Tile Industry Defense Fund, and Local 7 Tile Industry Local Political Action Committee, (collectively, the "Local 7 LMRA Funds," together with the Local 7 Benefit Funds, hereinafter

referred to as the "Local Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with sections 302(c)(4) and 302(c)(6)-(9) of the LMRA, 29 U.S.C. § 186(c)(4), (6)-(9).  The Local LMRA Funds maintain their principal place of business at 45-34 Court Square, Long Island City, New York 11101.

6. Plaintiffs Trustees of the Bricklayers & Trowel Trades International Pension Fund (the "IPF") is a multiemployer labor-management trust fund organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5).  The IPF is a multiemployer employee benefit plan within the meaning of Section 3(3), (37) of ERISA, 29 U.S.C. § 1002(3), (37).  The Trustees of the IPF are fiduciaries of the IPF within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21).  The IPF maintains its principal place of business at 620 F Street, N.W., Washington, D.C. 20004.

7. Plaintiffs International Masonry Institute ("IMI") and Trustees of the Bricklayers and Allied Craftworkers Political Action Committee ("BAC PAC," together with IMI, hereinafter referred to as the "International LMRA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with sections 302(c)(4) and 302(c)(6)-(9) of the LMRA, 29 U.S.C. § 186(c)(4), (6)-(9).  The International LMRA Funds maintain their principal place of business at 620 F Street, N.W., Washington, D.C. 20004.

8. The Local Funds, together with the International LMRA Funds, are collectively referenced hereafter as "The Funds."

9. Defendant Baybrent Construction Corp. ("Baybrent"), a successor to dissolved entity Baybrent Tile Corp.,[1] is a domestic business corporation organized under the laws of the State of New York. At all relevant times, Baybrent was engaged in business as an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 301 of the LMRA, 29 U.S.C. § 185. Baybrent maintains a principal place of business at 1637 Sycamore Ave, Bohemia, New York 11716.

10. The New York Department of State Division of Corporations lists "THE CORPORATION" with an address of 1637 Sycamore Ave, Bohemia, New York 11716 as the post office address to which the Secretary of State shall mail any process against Baybrent served upon the Secretary of State by personal delivery.

11. The New York Department of State Division of Corporations lists "Richard Hoshino" with an address of 1637 Sycamore Ave, Bohemia, New York 11716 as the Chief Executive Officer of Baybrent.

12. The New York Department of State Division of Corporations lists the address of the principal executive office of Baybrent at 1637 Sycamore Ave, Bohemia, New York 11716.

13. Upon information and belief, at all relevant times, Baybrent was and continues to be owned and/or operated by Richard Hoshino ("Hoshino").

14. Defendant Legacy Tile Corp. ("Legacy") is a domestic business corporation organized under the laws of the State of New York. At all relevant times, Legacy was engaged in business as an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and

---

[1] Baybrent Construction Corp. did business under the assumed name "Baybrent Tile Corp." prior to the dissolution of Baybrent Tile Corp. in April 2020. The two entities shared the same principal and business address, workers' compensation coverage, and utilized the same website for advertising purposes. The website for Baybrent Construction Corp. was linked to www.baybrent.com, which had previously served as the website for Baybrent Tile Corp. Additionally the names "Baybrent Construction Corp." and "Baybrent Tile Corp." were used interchangeably in business operations.

was an employer in an industry affecting commerce within the meaning of section 301 of the LMRA, 29 U.S.C. § 185. Upon information and belief, Legacy maintains a registered address listed with the New York State Department of State, Division of Corporations, at 102 Pilcher Street, Babylon, New York 11702.

15. The New York Department of State Division of Corporations lists "LEGACY TILE CORP. ATTN: FREDERICK F. STEIN" with an address of 102 Pilcher Street, Babylon, New York 11702 as the post office address to which the Secretary of State shall mail any process against Legacy served upon the Secretary of State by personal delivery.

16. Upon information and belief, at all relevant times, Legacy was and continues to be owned and/or operated by Frederick Stein ("Stein"). Upon information and belief, Stein resides at 102 Pilcher Street, Babylon, New York 11702.

17. The last address of Legacy known to the Funds is 1069 Main Street, Ste 307, Holbrook, New York 11741. Upon information and belief, this address is associated with a mailbox located at a UPS Store in Holbrook, New York.

## FACTS

### *The Collective Bargaining Agreements*

19. The Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers (the "Union") is a labor organization within the meaning of Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined in Section 502 of the Taft-Hartley Act, 29 U.S.C. § 142.

20. At all relevant times, Baybrent was party to, or manifested an intention to be bound by, a collective bargaining agreement ("CBA") with the Union.

21. The CBA and the Funds' policies for the collection of benefit contributions (the "Collection Policy"), which are incorporated by reference in the CBA, require Baybrent to remit benefit contributions to the Funds as third-party beneficiaries of the CBA, including contributions for related entities on whose behalf the Funds serve as collection agents, at hourly rates specified in the CBA in connection with all work performed within the trade and geographical jurisdiction of the Union ("Covered Work").

22. Pursuant to the CBA and the Collection Policy, Baybrent is required to remit contributions to the Funds on or before the 15th day of the month (the "Due Date") in amounts determined by multiplying specified hourly contribution rates by the number of hours that Baybrent's employees performed Covered Work during the preceding calendar month. The resulting amount is hereinafter referred to as "Required Contributions." If a signatory employer fails to remit Required Contributions by the relevant Due Date, then that employer is delinquent in its contribution obligations under the CBA.

23. Under the CBA, if a signatory employer performs Covered Work "under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the employer (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly (such as through family) any significant degree of ownership, management, or control, the terms and conditions of this [CBA] shall be applicable to all such work."

24. The CBA also prohibited signatory employers, such as Baybrent, from subcontracting, selling, subletting and/or assigning any Covered Work to "any other person, firm, corporate or entity who is not a signatory to or bound by this [CBA]."

25. Additionally, the CBA and the Collection Policy require that Baybrent furnish its books and payroll records to the Funds, or the Funds representatives, when requested by the Funds for the purpose of conducting an audit to verify that required contributions have been remitted in compliance with the benefit fund contribution obligations set forth in the CBA.

26. Further, the CBA and the Collection Policy specify that Baybrent must furnish the books and payroll records of "… any affiliate, subsidiary, alter ego, joint venture or other related company of the Employer…" when requested by the Funds for the purpose of conducting an audit.

27. Under the CBA and the Collection Policy, if an employer, like Baybrent, fails to make prompt and timely payment of Required Contributions to the Funds by their respective Due Date, the Funds are entitled to: (1) payment of the unpaid Required Contributions; (2) interest charged on the delinquent contributions owed to the Local Funds at a rate of ten percent (10%) *per annum,* and interest charged on the delinquent contributions owed to the International LMRA Funds at a rate of fifteen percent (15%) *per annum*; (3) liquidated damages in the amount of twenty percent (20%) of the delinquent contributions owing; (4) the Funds' audit costs; and (5) the Funds' attorneys' fees and costs incurred in obtaining these amounts from the employer.

### *Defendants Baybrent and Legacy are Alter Egos and Constitute a Single Employer*

28. Upon information and belief, at all relevant times, Defendants Baybrent and Legacy are and were alter egos of each other, sharing substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.

29. Upon information and belief, at all relevant times, notwithstanding any nominal separation between them, Defendants Baybrent and Legacy constituted a single integrated employer with interrelated operations, common management, centralized control of labor relations, common and/or family ownership, and shared facilities and equipment.

30. Upon information and belief, the owner of Legacy, Frederick Stein, is the nephew of Baybrent's owner, Richard Hoshino, thus establishing a familial connection between Defendants' ownership.

31. Upon information and belief, at all relevant times, Frederick Stein was involved in the operations of Baybrent and was employed by Baybrent as a commercial project manager.

32. Upon information and belief, Defendants share common employees and officers, including but not limited to Albert Santangelo, who served as a supervisor and project manager for both Defendants.

33. Upon information and belief, at all relevant times, Defendants were and are engaged in the business of commercial tile installation and related building and construction work.

34. Upon information and belief, Defendants have performed Covered Work as defined by the CBA, including but not limited to Covered Work performed at 5809 28th Ave, Woodside, NY 11377.

35. Upon information and belief, Defendants have the same business purpose: residential and commercial tile installation services in the New York City metropolitan area.

36. Upon information and belief, Legacy has performed Covered Work at locations including the Time Out Market in Brooklyn; a mixed-use development at 425 Westchester Avenue in the Bronx; and a commercial office building at 5 Hanover Square in Manhattan.

37. Upon information and belief, Defendants have presented themselves as a unified entity with a common business purpose. Indeed, Legacy's website supports this, stating Legacy was founded "with the goal of integrating decades of experience amongst our founders" and advertising "a background spanning generations within the ceramic tile industry." Given that Legacy was established in 2017, this suggests that Legacy is leveraging the reputation and

experience of Baybrent and presenting the Defendants as operating as a single business entity, with Legacy as a mere extension of Baybrent.

38. Upon information and belief, at relevant times, Defendants have shared, had shared, and/or continue to share common facilities and equipment.

39. Upon information and belief, Legacy at relevant times has not had its own commercial space and instead uses Baybrent's warehouse and equipment.

40. Upon information and belief, Defendants at relevant times have shared a place of business and operate out of a common facility, as indicated by the absence of a separate commercial address associated with Legacy.

41. Upon information and belief, Legacy and Baybrent have actively attempted to obscure their connection to one another and have purposely ceased labeling equipment and materials on job sites to this end.

42. Upon information and belief, Legacy purposely obscured its business purpose and the fact of its performance of Covered Work until recently, thus preventing the Plaintiffs from being able to discover facts sufficient to establish a claim against Legacy.

43. Legacy, as an alter-ego of and a single employer with Baybrent, and as an entity under common control, is subject to the terms of Baybrent's CBA, and each company is jointly and severally liable for each other's unpaid contributions, along with associated damages and liabilities, to the Funds.

## PLAINTIFFS FIRST CLAIM FOR RELIEF
*Declaratory Judgement*

44. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

45. At all relevant times, Baybrent was a party to, or manifested an intention to be bound by the CBA.

46. At all relevant times, Baybrent and Legacy were alter egos/single employers with each other and had substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.

47. At all relevant times, Baybrent and Legacy were directly or indirectly under common control, ownership, or management.

48. By virtue of their status as alter egos/single employers, Defendants both are, and at all relevant times have been, bound by Baybrent's CBA with the Union and are jointly and severally liable for contributions to the Funds for Covered Work performed, as defined under Baybrent's CBA.

49. By virtue of their status as entities directly or indirectly under common control, ownership, or management, Defendants both are, and at all relevant times have been, bound by Baybrent's CBA and are jointly and severally liable for contributions to the Funds for work performed under Baybrent's CBA.

50. An actual controversy has arisen and now exists between the parties with respect to the status of Defendants as alter egos and/or single employers.

51. Accordingly, the Funds seek a judicial determination, pursuant to 28 U.S.C. §§ 2201 and 2202, that Baybrent and Legacy are alter egos and/or a single employer, that Defendants directly or indirectly share common control, ownership or management, and that Defendants have accordingly at all times both been bound by Baybrent's CBA, and that Defendants are jointly and severally liable for each other's unpaid contributions and affiliated damages and relief for work performed by their employees under the CBA.

## PLAINTIFFS SECOND CLAIM FOR RELIEF

*Alter Ego & Single Employer Liability/Liability for
Delinquent Contributions/Violation of the CBA*

52. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

53. Section 515 of ERISA provides, "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a [CBA] shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

54. Section 301 of the LMRA authorizes the Funds, as third-party beneficiaries to the CBA, to file a federal lawsuit regarding an employer's violation of that CBA.

55. Under Section 502(g)(2) of ERISA, if an employer violates its obligations under Section 515 of ERISA, then the multiemployer benefit plan to which such an obligation is owed is entitled to mandatory relief in the form of "the unpaid contributions, interest on the unpaid contributions, an amount equal to the greater of [either] interest on the unpaid contributions or liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . reasonable attorneys' fees and costs of the action, to be paid by the defendant, and such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2).

56. Baybrent is, and has been at all relevant times been a party to or otherwise bound by the CBA with the Union.

57. The CBA and the documents and instruments governing the Funds required Baybrent to make specified hourly contributions to the Funds in connection with all Covered Work performed and to submit to, and comply with, periodic payroll audits when requested by the Funds.

58. At relevant times, Baybrent and Legacy were alter egos of, and single employers with each other and had substantially identical control, management, business purpose, operations, equipment, customers, supervision, and ownership.

59. By virtue of their status as alter egos/single employers, Baybrent and Legacy are, and at all relevant times have been, bound by the CBA and they are jointly and severally liable for each other's obligations thereunder.

60. Baybrent and Legacy violated the CBA's terms when they failed to remit contributions in connection with Covered Work performed by Baybrent and/or Legacy which was within the scope and jurisdiction of the CBA.

61. Absent an audit, the Funds have no ascertainable method of determining the amount of delinquencies due and owing for Covered Work performed Defendants, as defined by the CBA.

62. Accordingly, a court order compelling Baybrent and Legacy to each submit to an audit is necessary for the Funds to recover delinquencies due and owing by these entities.

63. Pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the CBA and the Funds' Collection Policy, the Funds are entitled to an order, based on Defendants' alter ego/single employer status that has failed to comply with the terms and conditions of the CBA: (1) directing Defendants each to submit to an audit of their books and records covering the period February 15, 2017 through the present date; (2) finding Defendants jointly and severally liable for all delinquent contributions and associated liquidated damages and interest revealed by the audits, or otherwise found to be due and owing to the Funds during the course of this litigation, and (3) finding Defendants jointly and severally liable for all attorneys' fees and costs, including audit costs, incurred in the course of this litigation.

## **DEMAND FOR JURY TRIAL**

64.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Funds demand trial by jury in this action of all issues so triable.

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A.  On Plaintiffs' First Claim for Relief, declaring that: (1) Baybrent and Legacy are alter egos of and/or single employers; and (2) that Defendants have at all times been bound by Baybrent's CBA; and (3) that Defendants are jointly and severally liable for each other's unpaid contributions to the Funds and all associated damages.

B.  On Plaintiffs' Second Claim for Relief against: (1) directing Defendants each to submit to an audit of their books and records covering the period February 15, 2017 through the present date; (2) finding Defendants jointly and severally liable for all delinquent contributions and associated liquidated damages and interest revealed by the audits, or otherwise found to be due and owing to the Funds during the course of this litigation, and (3) finding Defendants jointly and severally liable for all attorneys' fees and costs and audit costs incurred in the course of this litigation.

C.  Award Plaintiffs such other and further relief as the Court may deem just and proper.

Dated:  New York, New York            Respectfully submitted,
        March 4, 2025

                                      **VIRGINIA & AMBINDER, LLP**

                                By:        */s/ Maura Moosnick*
                                      Maura Moosnick, Esq.
                                      40 Broad Street, 7th Floor
                                      New York, New York 10004
                                      (212) 943-9080
                                      mmoosnick@vandallp.com
                                      *Attorney for Plaintiffs*